SCOTTS BLUFF COUNTY, APPELLANT, V. MATTHEW H. MC-HENRY ET AL., APPELLEES.

FILED APRIL 10, 1936. No. 29407.

*Wright & Wright,* for appellant.

*Mothersead & York* and *J. L. Grimm, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, DAY and PAINE, JJ.

PAINE, J.

This is an appeal by Scotts Bluff county, appellant, from a judgment in its favor, in the sum of $429.76, instead of $5,385.30, as claimed by the county, against Amanda S.

McHenry, administratrix of the estate of Matthew H. Mc-Henry.

An action was commenced by Scotts Bluff county, as plaintiff, against Matthew H. McHenry, the clerk of the district court, and his bondsman, the Fidelity and Deposit Company of Maryland, to recover for the county interest which the clerk had earned on money which had come into his hands as clerk of the district court, and some of which he had deposited in a bank in open checking account, and held a portion of it in the form of certificates of deposit, and other sums in interest-bearing securities. He had retained all of the interest earned thereon, for which interest he had made no accounting to the county. Upon the death of Mr. McHenry before trial, his widow, as administratrix, was substituted as a party defendant. While the petition is in the form of an equitable action for an accounting, it was tried twice as a law action, once to a jury, and the second time a jury was waived and it was tried to the court. The court entered a judgment for the county, as above set out, and also entered a judgment in favor of the defendant Fidelity and Deposit Company.

A large amount of evidence was taken in the case, supported by some 91 exhibits, consisting of the auditor's report, deposit slips, certificates of deposit, bank ledger pages, and pages from the fee and cash books of the office of the clerk of the district court. The period covered by the surety bonds of defendant company is from 1921 to 1930. The sums accumulated were made up of a very large number of small items, such as uncalled-for witness fees and mileage, some unclaimed for many years, uncalled-for sheriff's fees, and uncalled-for fees due newspapers for publication notices, together with the proceeds of some judgments which had been paid to the clerk. There were, in addition, other funds, such as items of alimony and support money, and other sums which items the clerk was not required to collect, but which appeared to be paid him simply for the convenience of the parties.

On January 8, 1908, when Matthew H. McHenry took

over the office of clerk of the district court of Scotts Bluff county from James McKinley, he received the sum of $2,837.89 for sundry items, and of these original amounts the report of the auditor shows he had never paid out items amounting to $594.44 which he had retained from 1908.

Mrs. McHenry was appointed administratrix of her husband's estate on September 26, 1930, and testified that she had paid over all the principal sums to the successor clerk of the district court, and such clerk testified that on March 24, 1931, she paid him $14,302.84, and on November 15, 1930, she had paid the additional sum of $8,767.73.

The brief of the plaintiff commences its argument with a reference to section 2370, Comp. St. 1922, which provides: "That in all counties in which the fees of the office may be in excess of the amounts fixed by law which the clerk is entitled to retain as compensation, he shall in no case retain to his own use any fees, revenues, perquisites or receipts from whatsoever source, that may come to him by virtue of holding said office, but shall account for and pay the same into the treasury of the county." This section of the statute was amended in 1927 (Laws 1927, ch. 118) and now appears as section 33-108, Comp. St. 1929, which in so far as applicable to this case is as follows: "The clerk of the district court of each county shall in no case retain to his own use any fees, revenues, perquisites or receipts, fixed, enumerated or provided in this or any other section of the statutes of the state of Nebraska."

The plaintiff contends that, under the above-quoted statutes, the interest earned from funds which McHenry held by virtue of being clerk of the district court was a perquisite of his office, and he was bound to account to the county for such interest. "Perquisite" is defined by Webster's New International Dictionary as follows: "A thing or property acquired otherwise than by inheritance, as by industry or purchase. A gain or profit incidentally made from employment in addition to regular salary or wages. A gratuity or tip."

Interest received by a county treasurer on deposit of pub-

lic money is a perquisite within the meaning of the statute requiring all perquisites to be paid into the county treasury. *Lake County v. Westerfield,* 196 Ill. App. 432, Ann. Cas. 1918E, 102.

On the other hand, the defendants claim that only a part of the money upon which interest was earned was fees of the office, and that the balance had come as costs in actions pending in court, judgments, and alimony paid to him, sheriff's fees and printer's fees, and that, because the county was not entitled to all of the principal sum upon which interest was earned, the county was not entitled to interest.

The law now requires quarterly reports to be filed, and upon following the provisions of section 77-2602, Comp. St. 1929, certain funds of this nature will be forfeited into the common school fund of the county. Another provision to the same effect is found in section 33-154, Comp. St. 1929. *Douglas County v. Moores,* 66 Neb. 284, 92 N. W. 199.

In the case of *Huffman v. Koppelkom,* 8 Neb. 344, this court had before it an action upon an official bond of the sheriff for personal injury in making an arrest. Judge Lake maintained that an action on an official bond could only be maintained for injuries done *virtute officii,* and not for acts done *colore officii* merely, and the opinion holds that the facts show positively that the act was done *virtute officii.* The same case came before the court, after trial to a jury, in 12 Neb. 95, 10 N. W. 577. Since this case, innumerable references have been made to this early case, and it is referred to by United States Circuit Judge Stone, as follows: "Whatever may be the rule elsewhere, in Nebraska it is firmly established that an official bond covers only such acts or failures to act as come within the legal duties of the officer; in other words, such as some of the decisions term *virtute officii,* as distinguished from acts done *colore officii* merely." *Bassinger v. United States Fidelity & Guaranty Co.,* 58 Fed. (2d) 573.

The Nebraska holding is clearly set forth in two cases: First, in *Stephens v. Hendee,* 80 Neb. 754, 115 N. W. 283, where Commissioner Good held that the sureties upon an

official bond of a county judge were not liable for money which did not come into the possession of their principal by virtue of his office; and, second, in *Knox County v. Cook,* 126 Neb. 477, 253 N. W. 649, in which the same judge held that a county judge was liable on his official bond for trust funds which came into his hands by virtue of his office, which funds he had lost by the failure of the bank in which he had deposited them, following the decision in *Thomssen v. Hall County,* 63 Neb. 777, 89 N. W. 389, and many other decisions. We find an exhaustive discussion of this distinction in 13 Neb. Law Bulletin, 321.

It has been well stated that, while this seems a harsh rule to require a county judge to be an absolute insurer of such funds, the remedy must come from the legislature, and not from the court.

It is shown that the majority rule as adopted in many states has been consistently followed by our Nebraska court, to the effect that a public officer is an insurer of public funds in his custody, while the minority rule, supported by a few states, is that an officer, when he has exercised diligence in good faith, is not liable for losses arising from matters beyond his power to prevent.

The trial court was right in holding that the surety company was not liable for the interest collected on funds held by him. However, after his death, which occurred while in office, when a proper demand was made upon his estate to account to his duly qualified successor in office, then all such funds should be accounted for to his successor, and as this was not done promptly, and as certain portions of the money withheld by him belonged to the county itself, together with interest earned by him thereon, the trial court was right in holding that his estate was liable for a certain amount of interest drawn thereon.

No prejudicial error having been shown in the record, the judgment of the trial court is hereby

AFFIRMED.

DAY, J., dissents.