MYRON, Appellant v. COIL, Respondent

(143 N.W.2d 738)

(File No. 10237. Opinion filed June 22, 1966)

Rehearing denied July 26, 1966

**Bogue & Weeks,** Vermillion, for plaintiff and appellant.

**Woods, Fuller, Shultz & Smith, H. L. Fuller,** Sioux Falls, for defendant and respondent.

MANSON, Circuit Judge.

At about 11:30 a.m. on September 30, 1962, plaintiff's decedent, Bradford Myron, a high school junior, 16 years of age, mounted his motor scooter in the parking lot of the Vermillion, South Dakota, U. S. Post Office and drove it southward to a private driveway which connected the parking lot with Kidder Street, a concrete-paved public street which runs east and west to the south of the post office.

At about this time, the defendant, Linda J. Coil, a 16-year old school girl, entered her father's 1961 Pontiac, which had been parked on the north side of Kidder Street east of the post office, backed out from the curb and, accompanied by her sister, Muriel, drove west on the north side of Kidder Street at approximately 15 miles per hour.

The evidence discloses that the car proceeded without incident directly to its fatal collision with the Myron vehicle. Decedent is shown to have, in the meantime, driven his scooter across the sidewalk which traverses the driveway, greeting a friend walking on the sidewalk to the west of the driveway and then waving to the other friends who were walking to the east of the driveway, before driving the few remaining feet to Kidder Street where, the record indicates, the visibility to the east was somewhat hampered by the presence of cars, parked diagonally at the curb.

Decedent had proceeded only a few feet on Kidder Street, testimony indicating that he "slanted" to his left and then turned the front wheel of the scooter to the right just before impact with the car. Defendant turned the steering wheel of the car she was driving "slightly", when she saw decedent coming out onto Kidder Street. The impact came "a second later" "or a little less" and she applied her brakes after the impact. The scooter-car collision caused injuries to plaintiff's decedent which resulted in his death.

Trial to a jury in the Circuit Court of the First Circuit resulted in a verdict for defendant, returned on October 16, 1964. This cause is presently before this court on appeal from the judgment entered on such verdict.

The principal grounds for appeal are three in number, addressed (1) to the refusal of the trial court to submit the issue of "last clear chance" to the jury by instruction, (2) to rulings made in the course of the trial in respect of testimony proffered and (3) to the refusal of the trial court to permit reopening of the trial at the behest of plaintiff, after plaintiff had rested but before the instructions were settled, to adduce testimony to show how far an automobile such as defendant's would travel after brake application.

Appellant's position upon the matter of "last clear chance" is that the physical facts shown are such as to justify submission of the doctrine to the jury. Review of the substantive evidence in the light most favorable to appellant discloses that defendant

first saw plaintiff's decedent when defendant was about one car length east of the driveway. The only evidence of defendant's speed is her own statement to the effect that she was driving 15 miles per hour. There is no showing of excessive speed by any witness, indeed, appellant adopted the figure of 15 miles per hour for his time and space computations. It is shown that defendant cried out when she first perceived decedent and that her sister, hearing the outcry, looked up and saw decedent about one-half car length ahead and in front of the Coil car, the impact being "almost instantaneous" thereafter, to quote the testimony of the sister.

 Appellant urges that the evidence in the case indicates that defendant had a "last clear chance" to avoid the collision, and resulting injury to decedent. His showing to this end consists largely of computations in time and space factors and is, among other things, based upon the proposition that the defendant's car, when defendant first saw decedent, was actually some 51 feet from the ultimate collision point.

This proposition finds no support in the substantive evidence adduced in the trial of this action and the computations performed with this distance as a basis have no competent foundation or application. Viewed in a light most favorable to appellant, it rather appears that decedent who either looked and did not see or did not look at all, proceeded to drive his motor scooter onto a public highway from a private driveway in violation of SDC 44.0301(1) and (2) and an applicable city ordinance of the City of Vermillion, and continued to so drive it up to the point of fatal juncture with defendant's car. Defendant first saw decedent when he was a car length away and she was traveling 15 mph or 22 feet per second. The length of a car was established at 20 feet. Reaction time as established in the trial by expert testimony and the South Dakota Driver's Manual tables of time and distance, would be between 3/4 of a second and 1 1/2 seconds. Assuming the shorter of these two extremes, defendant's car would have traveled 16 1/2 feet before defendant could have commenced to react to the situation and only at the expiration of that time could defendant have braked or taken action to prevent the collision.

A situation very analogous to the instant case was the subject of discussion in Vlach v. Wyman, 78 S.D. 504, 104 N.W.2d 817. There the court adopted the language employed in Poncino v. Reid-Murdock & Co., 136 Cal.App. 223, 28 P.2d 932, 934, as follows:

"it is not enough to relieve a plaintiff of his own negligence that the defendant may have had a chance to avoid the accident, but defendant must have had the last chance and also had a clear chance to do so by the exercise of ordinary care. * * * While the doctrine of last clear chance has been applied in certain exceptional cases involving collisions between moving vehicles, we are of the opinion that it should not be applied to the ordinary case in which the act creating the peril occurs practically simultaneously with the happening of the accident and in which neither party can fairly be said to have had a last clear chance thereafter to avoid the consequences."

This was not a situation where precedent negligence of the decedent had placed him in a position of recognized and static danger from an oncoming car. It is a situation where decedent was in negligent motion up to the point of impact. Will such a situation give warrant to an instruction on "last clear chance"? We think not. We are, rather, inclined in this connection, to the view, put concisely by respondent, that, at the point where both actors became aware of the danger, "neither had a chance".

We have examined the challenged rulings in respect of evidence and have determined that there is no error therein.

■■ The remaining contention of appellant—that error lies in the refusal of the trial court to permit appellant to reopen his case so that testimony might be adduced as to the distance a car such as defendant's would travel, with the brakes applied, under road and speed conditions as established in the trial—goes, of course, to the matter of judicial discretion. Having in consideration that the matters sought to be proved were well within the ambit of plaintiff's case from the onset and not in-

duced by any surprise arising in the course of the trial, we can do no better than to follow the line established in Slagle & Co. v. Bushnell, 70 S.D. 250, 16 N.W.2d 914, 156 A.L.R. 1070, cited by both parties in support of their respective positions. This case suggests that the test to be employed in reviewing matters involving judicial discretion is "whether we believe a judicial mind, in view of the law and the circumstances, could reasonably have reached that conclusion." We so believe. The learned trial judge did not abuse his discretion.

Judgment affirmed.

All the Judges concur.

MANSON, Circuit Judge, sitting for ROBERTS, J., disqualified.